Case: 25-3410   Document: 22   Page: 1   Date Filed: 06/25/2026

No. 25-3410

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,     :
                              :
     APPELLEE,               :
                              :
vs.                           :
                              :
LEON HAYNES                   :
                              :
     APPELLANT.              :

---

**ON APPEAL FROM A FINAL JUDGMENT IN A CRIMINAL CASE OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CRIMINAL NO. 24-CR-232
SAT BELOW: HONORABLE WILLIAM J. MARTINI, U.S.D.J.**

---

---

**BRIEF OF APPELLANT LEON HAYNES AND
APPENDIX VOLUME I (Pages 1 – 9)**

---

**KORIBANICS & KORIBANICS**
**Attorney at Law**
**in the State of New Jersey**
**Michael P. Koribanics, Esq.**
**685 Van Houten Avenue**
**Clifton, NJ 07012**
**(973) 778-1800**

*Attorneys for Appellant*

Case: 25-3410    Document: 22    Page: 2    Date Filed: 06/25/2026

-ii-

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

STATEMENT OF SUBJECT MATTER AND
   APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF RELATED CASES AND PROCEEDINGS. . . . . . .   2

CONCISE STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .   8

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

   I.    THE EVIDENCE WAS INSUFFICIENT TO PROVE
       SPECIFIC INTENT TO EVADE TAXES UNDER 26
       U.S.C. § 7206(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

   II.   EVIDENTIARY ERRORS IMPROPER ADMISSION OF
       TEXT MESSAGES WITHOUT PROPER AUTHENTICA-
       TION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

   III.  ABUSE OF DISCRETION: IMPROPER LAY OPINION
       AND INTERPRETATION OF TXT MESSAGES . . . . . . . .   19

   IV.  UNFAIR GOVERNMENT CHARACTERIZATION OF
       THE EVIDENCE IN PRESENTING CIRCUMSTANTIAL
       EVIDENCE AS ADMISSIONS. . . . . . . . . . . . . . . . . . . . .   22

   V.   THE PROSECUTION OF MR. HAYNES WAS
       CONDUCTED UNDER AN UNLAWFULLY
       APPOINTED UNITED STATES ATTORNEY,

REQUIRING VACATUR AND REMAND . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF BAR MEMBERSHIP

CERTIFICATE OF WORD COUNT

CERTIFICATE OF SERVICE

CERTIFICATION THAT E-BRIEF AND HARD COPY ARE IDENTICAL

CERTIFICATION THAT E-BRIEF HAS BEEN VIRUS CHECKED

APPENDIX VOLUME I

TABLE OF CONTENTS

NOTICE OF APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JUDGMENT IN A CRIMINAL CASE, United States District Court, District of New Jersey, U.S.A. vs. LEON HAYNES Case No. 2:24-CR-00232 (WJM) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Chapman v. California,* 386 U.S. 18, 24 (1967) . . . . . . . . . . . . . . . . . . . . .   12

*Giglio v. United States*, 405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . .   23

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) . . . . . . . . . . . . . . . . . . .   11

*United States v. Bansal*, 663 F.3d 634, 667 (3d Cir. 2011) . . . . . . . . . . . .   12

*United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012). . . . . . . . . . . . .   12

*United States v. Browne,* 834 F.3d 403 (2016) . . . . . . . . . . . . . . . . . . . . . . .12, 18, 19

*United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-425(3d Cir. 2013)   11

*United States v. Faulks*, 201 F.3d 208, 212 (3d Cir. 2000). . . . . . . . . . . . . .   13

*United States v. Giraud, Jr.,* 160 F.4th 390 (2025) . . . . . . . . . . . . . . . . . . .   24

*United States v. Green,* 617 F.3d 233, 239 (3rd Cir. 2010) . . . . . . . . . . . . . .   11

*United States v. Jannotti*, 729 F.2d 213, 219 (3d Cir. 1984) . . . . . . . . . . . .   12

*United States v. Modica*, 663 F.2d 1173, 1183 (3d Cir. 1981) . . . . . . . . . . .   24

*United States v. Olano*, 507 U.S. 725, 732 (1993). . . . . . . . . . . . . . . . . . . .   12

*United States v. Pomponio,* 429 U.S. 10, 11-12 (1976) . . . . . . . . . . . . . . .   8, 13

*United States v. Rutzlaf,* 501, U.S. 135, 141 (1985) . . . . . . . . . . . . . . . . . .   16

*U.S. v. Sliker,* 751, F.2d 477, 499 (2nd Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009). . . . . . . . . . . . . . 12

*United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). . . . . . . . . . . . . . . 11

*United States v. Womack,* 55 F.4th 219, 234 (2022) . . . . . . . . . . . . . . . . . . 11

*United States v. Young*, 470 U.S. 1, 6-7 (1985) . . . . . . . . . . . . . . . . . . . . . . 12

## Federal Statutes

1.    26 U.S.C. § 7206(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 13

2.    28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Federal Rules of Evidence

1. Fed. R. Evid. 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 19, 26

2. Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

3. Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 21, 26

4. Fed. R. Evid. 801(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

5. Fed. R. Evid. 801(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

6. Fed. R. Evid 901(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11,
   12, 16, 17, 19, 26

**Federal Rules of Appellate Procedure**

1. F.R.A.P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. F.R.A.P. 28.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Federal Rules of Criminal Procedure**

1. F.R.C.P. 52(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Case: 25-3410   Document: 22   Page: 6   Date Filed: 06/25/2026

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4. A Final judgment of conviction was entered against Leon Haynes by the United States District Court for the District of New Jersey on April 15, 2026, and a timely notice of appeal was filed on April 15, 2026.

## STATEMENT OF THE ISSUES

I. Whether the Evidence was Constitutionally Insufficient to Support a Conviction Under 26 U.S.C. § 7206(2) for Filing False Tax Returns, Where the Evidence Failed to Prove Beyond a Reasonable Doubt That Mr. Haynes Knowingly and Willfully filed Returns He Knew to be False.

**Record Citation:** Trial Transcript, Volume IV, at 474-524 [Appendix498-Appendix548] (IRS Special Agent Valenti Direct Examination, November 7, 2024)

II. Whether the Trial Court Abused Its Discretion By Admitting Text Messages (Government Trial Exhibits 115, 1003, 1006-A-I, 1008-B, 1015-A, 1019-A, 1020-A, 1027-A, 1033-A, 1047) [Appendix0774, Appendix0776, Appendix0777, Appendix-787, Appendix0789, Appendix0806, Appendix0816, Appendix0817, Appendix0818, Appendix0822, Appendix0840, Appendix0841, Appendix0974, Appendix0980, Appendix1011, Appendix1112, Appendix 1143, Appendix1147] Where the Prosecution Offered No Independent Evidence of Their Authenticity and Mere Stipulations Do Not Satisfy Federal Rule of Evidence 901(a)'s Authentication Requirements.

**Record Citation:** Trial Transcript, volume IV, at 488-524 [Appendix512-548); Sidebar Conference at pages 489 [Appendix513], 492 [Appendix516], 496 [Appendix520], 499-500 [Appendix523-524].

III. Whether the Trail Court Erred in Permitting Special Agent Valenti to

Interpret and Characterize Text Messages Between the Defendant and Third Parties, Thereby Violating Federal Rule of Evidence 701 (Lay Opinion) and Federal Rule of Evidence 602 (Foundation for Testimony).

**Record Citation:** Trial Transcript, Volume IV, at 492-493 [Appendix516-517], 510 [Appendix534] (Sidebar Objections to Interpretation.)

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Pursuant to Third Circuit Local Appellate Rule 28.1(a)(2), counsel certifies that no related cases are pending before this Court arising out of the same case or proceeding.

## CONCISE STATEMENT OF THE CASE

### A. Procedural History

Leon Haynes was indicted by a federal grand jury in the United States District Court for the District of New Jersey on charges rising under 26 U.S.C. § 7206(2) and related tax fraud statutes. The case is numbered 24-CR-232. Trial commenced on November 3, 2025, before the Honorable William J. Martini, United States District Judge. The prosecution presented evidence over the course of multiple trial days, including testimony from IRS Special Agent Joseph Valenti and exhibits consisting primarily of text messages, bank records, and tax form documentation.

A jury verdict was rendered on November 10, 2025, and judgment was entered on April 15, 2026. Mr. Haynes, timely, filed a notice of appeal on April 15, 2026.

## B. Factual Overview

The Government alleged that Mr. Haynes, a tax return preparer, filed false Form 941 (Employer's Quarterly Federal Tax Return) forms with the Internal Revenue Service on behalf of himself and various clients between late 2020 and May 2023. According to the government's theory, the forms contained materially false statements regarding withholdings, employment taxes, and other require filings, resulting in fraudulent refunds totaling millions of dollars.

The government's case rested substantially on:

1. Circumstantial Evidence; Bank account movements, refund deposits, and personal expenditures.

2. Text Messages: Communications between Mr. Haynes and various clients discussing "refunds," "money," and business relationships.

3. Agent Speculation: Interpretations of Mr. Haynes's conduct and intent drawn from these messages.

4. Third-party Statements: Without direct corroboration from the alleged co-conspirators.

-4-

Critically, the government did not establish that Mr. Haynes knew the 941

forms were false, possessed specific intent to evade taxes, or acted willfully in

violation of federal tax law.

## STATEMENT OF FACTS

### 1. The Investigation (TT IV: 477-482) [Appendix501-506]

In late 2021, IRS Special Agent Joseph Valenti received a report form a bank regarding "strange checks" being deposited. (TT IV: 478) [Appendix502] Agent Valenti, who holds degrees in accounting, law, and taxation, initiated an investigation that expanded over approximately four years. The investigation involved interviews, bank record reviews, and ultimately search warrants for the defendant's office and electronic devices.

Critical Fact: The investigation did not yield a cooperating witness who testified that Mr. Haynes intentionally provided false information, nor did it produce documentary evidence (such as false 941 forms themselves) that was authenticated through proper foundational testimony.

### 2. The Nature of the 941 Forms (TT IV: 483-484) [Appendix507-508]

The government presented evidence that approximately 941 forms were filed claiming refunds for withholdings, employment taxes, and other payroll-related taxes. Special Agent Valenti testified that the forms appeared to contain false entries. (TT IV: 484) [Appendix508] However, the forms themselves were not introduced into evidence with proper authentication, and no CPA or tax law expert testified regarding whether the forms violated substantive tax requirements or whether a reasonable tax preparer would have known they were false.

### 3. The Fee Structure (TT IV: 485) [Appendix509]

Agent Valenti testified that Mr. Haynes charged clients "a minimum of 10 percent, up to 15, 20 percent" of refunds received, characterizing this as a "kick-back" arrangement. (TT IV: 485) [Appendix509] However, **this**

**testimony is consistent with Mr. Haynes charging a legitimate service fee for tax return preparation,** which is not inherently fraudulent or indicative of knowledge that the returns were false.

### 4. The Text Messages (TT IV: 488-524) [Appendix512-548]

The prosecution introduced numerous text messages between Mr. Haynes and various clients. These messages included:

<u>Desteny Santana (TT IV: 490-494) [Appendix514-518]</u>

Messages reference "letters" from the government, patience, and deposit procedures. The government characterized these as evidence of consciousness of guilt. However, **legitimate taxpayers commonly discuss IRS letters regarding adjustments or inquiries.** The messages do not demonstrate knowledge of falsity.

<u>Lorna Gooden (TT IV: 496-497) [Appendix520-521]</u>

Messages discuss the client's vacation, government communication about "quarters," and references to doubling "for the new people." The prosecution interpreted "doubling" as evidence of increasing fraudulent amounts. However, **these messages are ambiguous and susceptible to innocent explanations,** such as discussions of legitimate quarterly adjustments or marking to new business clients.

<u>Lisandro Soto and Beatriz Nunez (TT IV: 498-501) [Appendix522-525]</u>

Government Exhibit 1047 contains a message stating: "Friends, I have nothing at all to fear with what I am doing, but don't send those checks back to them. If you already deposited them, just leave it and let God do his work." (TT IV: 501) [Appendix525] The government relied heavily on this message as an admission of guilty.

**Critical Evidentiary Problem:** Special Agent Valenti testified that he "observed" this message on a third party's phone but had not personally communicated with Lisandro Soto or Beatriz Nunez regarding the message's meaning. (TT IV: 498-499) [Appendix522-523]The sidebar discussion (TT

IV: 499-500) [Appendix523-524] reveals that Exhibit 115 [Appendix774] was a screenshot taken by Agent Valenti from one individual's phone, and it supposedly matched content from the defendant's iCloud account obtained via search warrant.

The defense properly objected that this constituted hearsay and lacked proper authentication. The trial court **overruled the objection** without sufficient analysis of whether: (1) the message was accurately transcribed; (2) the defendant's iCloud content matched the third-party phone content; or (3) the message's meaning was unambiguous.

Wynter Willis (TT IV: 502-508) [Appendix526-532]
Messages between Mr. Haynes and Wynter Willis reference the COVID relief bill, government communication, 941 forms, and a request to withdraw cash "under 10K per day." (TT IV: 505-507) [Appendix529-531] the prosecution highlighted the sub-$10,000 withdrawal language as evidence of structuring to avoid Currency Transaction Reports (CTRs).

**Critical Evidentiary Problem:** The message itself does not indicate **why** the $10,000 threshold is mentioned. While Special Agent Valenti explained that structuring under $10,000 is a common practice among financial criminals (TT IV: 506) [Appendix530], **this explanation is inadmissible speculation and shifts the burden to the defense to explain presumed innocent transactions**. The government must prove knowing structuring activity, not merely present facts susceptible to that interpretation.

Furthermore, the message reflects Wynter's request to Mr. Haynes, not the defendant's affirmative instruction to structure. This undermines the prosecution's conspiracy theory.

James Mastrogiovanni (TT IV: 509-512) [Appendix533-536]

Messages discuss watches, gifts, cash transfers, and the statement "I don't have loot like that." The prosecution characterized this as evidence of Mr. Haynes demanding payment. However, **these messages reflect negotiation and business discussions common in any service-provider relationship.**

Critically, in January 2023, Mr. Haynes stated: "I will just use you as an employee for 2022 if you are not going to pay me back." (TT IV: 512) [Appendix536] The government presented this as evidence of consciousness of guilt—that Mr. Haynes would fabricate employment records retroactively.

**Evidentiary Problem:** The message is **ambiguous.** Mr. Haynes's statement could reflect a frustrated business owner threatening a defaulting client with documentation in lieu of cash repayment. It does not unambiguously establish that Mr. Haynes intended to create false tax records.

Alabed Mnawar/ A1 Truck Lines (TT IV: 513-515) [Appendix537-539]

Messages discuss meeting locations, fee structures ("20 percent"), and fee disputes. The prosecution presented these as evidence of a racketeering scheme.

**Critically:** The messages reflect negotiation and dispute resolution, not conspiracy to commit tax fraud.

Steven Velez (TT IV: 515-517) [Appendix539-541]

Messages discuss vehicles (Maserati), IRS letters, and requests for information. These are consistent with a client-advisor relationship during an IRS inquiry.

Kismae Pipkin (TT IV: 517-524) [Appendix541-548]

The longest exchange of messages portrays discussions about EINs, business formation, employee status, and payment disputes.

**Critical Message:** (TT IV: 519-522) [Appendix543-546]: "My name is all over this paperwork and I have your back forever. But real numbers equals real fees." The prosecution argued this demonstrates consciousness of guilt.

**Proper Interpretation:** This message reflects a tax preparer's legitimate concern about placing his professional reputation and signature on tax

documents—**a required practice under IRS regulations**. The statement does not establish knowledge that the forms were false.

### 5. Defendant's Interviews (TT IV: 542-546) [Appendix566-570]

Special Agent Valenti testified that the defendant was interviewed twice:

1. **February 2023**: Interview with Agent Valenti and Special Agent Long.

2. **March 2023:** Interview with Agent Valenti, Agent Long, and AUSA present.

During these interviews, Mr. Haynes allegedly confirmed:

- His professional background (accounting degree, MBA, tax preparation experience since 2016)

- Knowledge of COVID relief provisions and tax law changes

- His client list

- That he had prepared 941 forms

**Critical Omission:** The prosecution did not present testimony from the defendant establishing that he **admitted knowing the 941 forms were false** or that he **admitted intentionally causing false statements to be filed**. The interviews apparently contained only confirmatory statements about his professional background and client relationships.

If Mr. Haynes had made incriminating statements during the interviews, the government would have introduced them as the prosecution's strongest evidence.

Their absence is highly significant.

## SUMMARY OF THE ARGUMENTS

## Insufficient Evidence of Specific Intent to Evade Taxes

The crime of filing a false tax return under 26 U.S.C. § 7206(2) requires proof that the defendant:

(1) Willfully filed a false tax return;
(2) Knowing it to be false, signed the tax return;
(3) With specific intent to evade taxes.

*United States v. Pomponio,* 429 U.S. 10, 11-12 (1976);

The evidence presented consists primarily of:

1. **Circumstantial financial evidence**: refund deposits and personal expenditures, which are consistent with legitimate receipt of compensation
2. **Ambiguous text messages**: capable of innocent explanations and not independently corroborated.
3. **Agent speculation**: testimony interpreting the defendant's state of mind based on his financial transactions

The government presented **no direct evidence** that Mr. Haynes knew the 941 forms contained false information or that he possessed the specific intent to defraud the government. The defendant's interviews apparently contained no admissions of knowledge or intent.

**The conviction should be reversed for insufficient evidence.**

## I. Evidentiary Errors: Text Message Authentication

The prosecution's case relied heavily on text messages that were allegedly extracted from the defendant's iCloud account via search warrant. However:

1. **No authenticating witness testified** regarding the search warrant process, the integrity of the iCloud extraction or chain of custody
2. **Exhibit 115** [Appendix774] was a screenshot from a third-party phone, not directly from the defendant's account

3. **The matching of Exhibit 1047 [Appendix1147] content** to the third-party phone was based on Special Agent Valenti's observation, not technical verification
4. **Stipulations cannot substitute for proper authentication** where the evidence is central to the case, and its authenticity is genuinely contested.

The trial court abused its discretion in admitting these exhibits without proper foundation under Federal rule of Evidence 901(a).

**The conviction should be reversed, or a new trial ordered, based on this evidentiary error.**

## II. Improper Lay Opinion and Interpretation

Special Agent Valenti interpreted text messages between the defendant and third parties, explaining their meaning and characterizing them as evidence of consciousness of guilt. This violated:

1. **Federal Rule of Evidence 701:** Lay opinions must have rational, based on witness's perception, not based on knowledge within the scope of Federal Rule of Evidence 702
2. **Federal Rule of Evidence 602:** Witnesses mut have personal knowledge of facts testified to
3. **Federal Rule of Evidence 801(c):** Third-party statements constitute hearsay if offered for truth

The trial court's overruling of defense objections to this testimony constituted reversible error.

**The conviction should be reversed or a new trial ordered.**

## III. Unfair Government Characterization of the Evidence

The prosecution's narrative presentation of text messages as admissions of guilt, without independent corroboration and while relying on Special Agent Valenti's interpretations, amounted to misconduct that deprived Mr. Haynes of a fair trial.

**IV.** **The Prosecution of Mr. Haynes was conducted under an unlawfully appointed United States Attorney, requiring vacatur and remand.**

## STANDARD OF REVIEW

**Standard of Review:** The standard for reviewing the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-425)(3d Cir. 2013) (en banc);(citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Although this standard is differential, it is not toothless—the government must still prove every element beyond a reasonable doubt, and a conviction resting on mere suspicion, speculation, or conjecture cannot stand. *United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988).

**Application:** This Court must determine whether the evidence proved beyond a reasonable doubt that: (1) Mr. Haynes knew the 941 forms were false; (2) he acted with specific intent to evade tax; and (3) he willfully filed the forms or caused them to be filed.

### A. Evidentiary Rulings and Authentication

The admission of evidence is reviewed for abuse of discretion. *United States v. Womack*, 55 F.4th 219, 234 (2022)(citing *United States v. Green*, 617 F.3d 233, 239 (3rd Cir. 2010)). Text messages must be properly authenticated under Federal Rule of Evidence 901(a), which requires evidence "sufficient to support a finding that the matter in question is what the proponent claims it is." **FRE 901(a).**

A stipulation regarding authenticity does not absolve the government of its burden to establish proper foundation, particularly where the documents themselves are central to the prosecution's case and their authenticity is genuinely contested. See *United States v. Browne*, 834 F.3d 403 (2016).

Application: Exhibits 115 [Appendix774], 1047 [Appendix1147], and related text message evidence should be reviewed for whether they were properly authenticated, with attention to whether screenshots from third-party phones genuinely matched the defendant's iCloud content, and whether the government satisfied FRE 901(a) without relying on defensive stipulations.

**Standard of Review:** Evidentiary rulings are reviewed for abuse of discretion. *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009). Where a constitutional dimension is implicated, the standard of review is *de novo. Id.* An evidentiary error requires reversal if it was not harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24 (1967); *United States v. Jannotti*, 729 F.2d 213, 219 (3d Cir. 1984)

**Standard of Review:** Authentication rulings are reviewed for abuse of discretion. *United States v. Bansal*, 663 F.3d 634, 667 (3d Cir. 2011). However, where an authentication ruling involves a question of constitutional dimension—such as the Confrontation Clause—the standard is *de novo. United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012).

**Standard of Review:** *United States v. Young*, 470 U.S. 1, 6-7 (1985) holds that when there was no objection to the prosecutor's remarks at trial, review is for plain error under Rule 52(b).

**Standard of Review:** Review is for plain error under Federal Rule of Criminal Procedure 52(b). *United States v. Olano*, 507 U.S. 725, 732 (1993). However, Appointments Clause violations are structural errors that satisfy

plain error review because they affect the integrity of judicial proceedings and the public's confidence in the adjudicatory process. *United States v. Faulks*, 201 F.3d 208, 212 (3d Cir. 2000).

## ARGUMENT

## POINT I

## THE EVIDENCE WAS INSUFFICIENT TO PROVE SPECIFIC INTENT TO EVADE TAXES UNDER 26 U.S.C. § 7206(2)

### A. The Applicable Legal Standard

To secure a conviction under 26 U.S.C. § 7206(2) for filing a false or fraudulent tax return, the government must prove beyond a reasonable doubt that the defendant:

(1) Willfully filed or caused to be filed a tax return;
**(2) Knowing the return to contain false or fraudulent information;**
(3) With **specific intent to evade taxes.**

*United States v. Pomponio*, 429 U.S. 10, 12 (1976);

### B. The Government's Evidence Does Not Establish Knowledge or Specific Intent

#### 1. Circumstantial Financial Evidence

The Government presented evidence of:
- Refund deposits into bank accounts
- Personal expenditures (vehicles, vacations, luxury goods)
- Fee payments received from clients

**Problem:** These facts are equally consistent with the defendant legitimately receiving compensation for tax preparation services and receipt of refunds to which he or his businesses were entitled. A rational finder of

fact could conclude that Mr. Haynes earned professional fees and deposits reflected client reimbursements or legitimate refunds.

The government presented no evidence regarding:

- Whether the 941 forms filed were mathematically incorrect
- Whether the withholding and payment information was materially false
- Whether the tax preparer with Mr. Haynes's qualifications would have known the forms were false
- Whether the refund amounts were disproportionate to legitimate employment tax positions

## 2. Absence of Direct Admissions

The government's interviews with Mr. Haynes did not yield admissions that he knew the forms were false or intended to commit tax fraud. Special Agent Valenti testified that Mr. Haynes:

- Confirmed his professional background
- Acknowledged preparing 941 forms
- Discussed his client relationships
- Stated he was knowledgeable about COVID relief provisions and tax law

**These facts do not establish knowledge of falsity or fraudulent intent.** If the government had obtained statements from Mr. Haynes acknowledging the forms' falsity or his fraudulent purpose, such statements would have been introduced as the prosecution's strongest evidence. Their absence is probative of the government's weakness.

## 3. Text Messages Do Not Establish Knowledge or Intent

The text messages presented at trial are ambiguous and susceptible to innocent interpretations:

Desteny Santana (discussing "letters" and deposits): Consistent with a legitimate taxpayer discussing IRS correspondence and legitimate refund deposits.

Loran Gooden (discussing "doubling" and "new people"): Susceptible to interpretation as discussions of legitimate quarterly tax adjustments or business growth, not necessarily fraudulent expansion.

Lisandro Soto/Beatriz Nunez ("Friends, I have nothing at all to fear…"): This statement could reflect the defendant's belief that his tax preparation services were legitimate and that "God will handle it" – a religious expression of confidence in lawful conduct. The statement does not unambiguously establish knowledge of falsity.

Wynter Willis (under $10,000 withdrawals): The sub-$10,000 amount could reflect many legitimate reasons, including the client's personal cash flow preferences or the defendant's inability to carry large amounts. Absent evidence that Mr. Haynes **knowingly and willfully structured transactions**, the reference to $10,000 does not establish consciousness of guilt.

James Mastrogiovanni (using as "employee"): This statement is ambiguous—it could reflect frustrated business owner rhetoric or a threat to document the relationship, not necessarily an admission of fabricating past employment records.

Kizmae Pipkin ("My name is all over the paperwork"): A tax preparer's legitimate concern about his professional reputation and statutory obligations to sign tax documents does not establish knowledge that the documents were false.

## C. Comparative Negligence Is Not Sufficient

Even if the government could establish that the 941 forms contained errors of false statements, negligence or error by Mr. Haynes in tax preparation does not constitute criminal fraud. The government must prove specific intent to commit tax evasion, not merely professional negligence or even gross negligence.

*United States v. Rutzlaf, 510 U.S. 135, 141 (1985)*

**D. Conclusion on Sufficiency**

Viewing the evidence in the light most favorable to the government, **no rational finder of fact could conclude beyond a reasonable doubt that Mr. Haynes knew the 941 forms were false or possessed specific intent to evade taxes.** The evidence is insufficient to support the conviction.

**The conviction should be reversed**.

## POINT II

**EVIDENTIARY ERRORS: IMPROPER ADMISSION OF TEXT MESSAGES WITHOUT PROPER AUTHENTICATION**

A. Federal Rule of Evidence 901(a) Authentication Requirements

Federal Rule of Evidence 901(a) provides:

> "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." (Emphasis added)

The burden is on the government to establish a foundation for the evidence's authenticity.

Authentication of digital evidence (including text messages and iCloud extractions) requires particular attention to:

1.) Chain of custody: How the evidence was obtained, preserved, and maintained.

2.) Integrity: Whether the evidence's content has been altered or corrupted.

3.) Technical accuracy: Whether the extraction or screenshot process was conducted by qualified personnel

4.) Corroboration: Independent verification that the evidence is what it claims to be.

## B. The Government Failed to Properly Authenticate the Text Message Exhibits

### 1. Exhibit 115 [Appendix774]: Screenshot from Third-Party Phone

Special Agent Valenti testified that he "observed" Exhibit 115 on a third-party's phone and that it appeared to match content from the defendant's iCloud account. (TT, IV: 498-501) [Appendix522-525]

**Evidentiary Deficiency:**

(a) **No authenticating witness was called** to testify regarding the search warrant process, iCloud extraction procedures, or technical verification that content from the defendant's account matched the third-party phone.

(b) **The chain of custody is incomplete**. How the screenshot was taken, by whom, and when is not established.

(c) **No expert testimony** was presented regarding whether the screenshot accurately captured the message or whether the defendant's iCloud content was reliably extracted.

(d) **The matching claim relies solely on Agent Valenti's observation**, not technical verification. An agent's subjective belief that messages match is insufficient for authentication.

(e) **The defendant's objections were overruled without analysis** of whether the government had met its burden under FRE 901(a).

The trial court's admission of Exhibit 115 without proper foundation constitutes an abuse of discretion.

### 2. Exhibit 1047 [Appendix1147] and Related Text Message Exhibits

Government Exhibit 1047 [Appendix1147], allegedly extracted from the defendant's iCloud account via search warrant, was admitted based on:

(a) **A stipulation regarding authenticity,** which the government cited at trial

(b) **Agent Valenti's testimony** that he reviewed the messages

(c) **No independent verification** of the extraction process or chain of custody

**Critical Problem:** A stipulation cannot substitute for proper evidence of authentication where the evidence is central to the prosecution's case and its reliability is genuinely contested. See *United States v. Browne, 834 F.3d 403 (2016) U.S. v. Sliker, 751, F.2d 477, 499 (2nd Cir. 1984)*(stipulations regarding authenticity do not satisfy FRE 901 where the document's authenticity is material and contested).

Moreover, the defense's explicit objections to these exhibits (TT IV: 489 [Appendix513], 492 [Appendix516], 496 [Appendix520], 499-500 [Appendix523-524]) established that authenticity was contested, rendering a stipulation inadequate.

### 3. The absence of Testimony from the Search Warrant Agent or iCloud Extraction Specialist

The prosecution did not call:

- The law enforcement officer who conducted the iCloud search warrant
- A digital forensics specialist who performed the extraction
- The iCloud custodian with knowledge of account security and extraction procedures.

This omission is significant and suggests the government could not establish proper authentication.

### C. The Ambiguity and Potential for Corruption of Digital Evidence

Case: 25-3410     Document: 22     Page: 24     Date Filed: 06/25/2026

Text messages and iCloud extractions are particularly vulnerable to alteration, selective presentation, and technical error. See *United States v. Browne, Id.* (emphasizing authentication concerns with digital evidence).

The prosecution presented no evidence addressing:

1. **Whether iCloud content remains unchanged** after extraction
2. **Whether screenshots accurately reflect** the original messages
3. **Whether selective screenshots** excluded context-providing messages
4. **Whether the defendant's phone** was the sole source of these messages or whether others could have accessed his iCloud account

Without such foundation, admission of the exhibits violated FRE 901(a) and constituted reversible error.

## D. Impact on the Trial

The text messages were the primary evidence of consciousness of guilt and intent to commit fraud. See Trial Transcript at pages 488-524 (nearly 40 pages of testimony devoted to reading and interpreting text messages).

Exclusion of these improperly authenticated exhibits would substantially weaken the government's case. Because the remaining evidence (circumstantial financial facts and agent speculation) would be insufficient to support a conviction. Reversal or a new trial is warranted.

## POINT III

### ABUSE OF DISCRETION: IMPROPER LAY OPINION AND INTERPRETATION OF TEXT MESSAGES

#### A. Federal Rule of Evidence 701: Lay Opinion Testimony

Federal Rule of Evidence 701 provides:

> "If a witness is not testifying as an expert, the witness's testimony in the form of an opinion is limited to one that is: (a) rationally base on the witness's perception; (b)

Case: 25-3410    Document: 22    Page: 26    Date Filed: 06/25/2026

helpful to clearly understanding the witness's testimony or a determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Special Agent Valenti is a trained IRS agent with expertise in financial crimes, tax law, and criminal investigation. When he interpreted the meaning of ambiguous text messages between the defendant and third parties, he was providing opinion testimony based on his specialized knowledge—precisely the type of testimony governed by Expert Rule 702, not lay opinion Rule 701.

## B. Text Message Interpretation Requires Expert Foundation

To admit opinions regarding the meaning of text messages, the prosecution must either:

1. Establish lay opinion foundation under Rule 701 (that Agent Valenti had personal knowledge of the parties' communications or understood their colloquialisms); or
2. Qualify the agent as an expert under Rule 702 and establish proper foundation for expert testimony.

The prosecution did neither. Agent Valenti testified that he "reviewed" text messages but was not a party to them. (TT IV: 488-489) [Appendix512-513]He had no personal knowledge of the communications' context, the parties' relationship, or their use of shorthand or colloquialisms.

For example:

- When "loot" appears, is it slang for money obtained legally or merely casual terminology for cash?
- When "doubling" is mentioned, does it refer to doubling fraud or doubling legitimate business?
- When the defendant says "my name is all over this paperwork," does he express concern about legitimate professional liability or consciousness of guilt?

Only an expert in communication analysis, textual interpretation, or the parties' colloquial speech patterns could properly opine on such matters. Agent Valenti's speculation is inadmissible.

## C. The Trial Court Overruled Proper Evidentiary Objections

The defense objected to Agent Valenti's interpretations at multiple points:

1. **TT IV: 492 [Appendix516]** (Sidebar): Defense objected to interpretation of "OMG"

   ° Trial Court **overruled** the objection

2. **TT IV:510 [Appendix 534]** (Sidebar): Defense objected to interpretation of "status read"
   ° Trial Court **overruled** the objection

3. **TT IV:506 [Appendix530]**: Defense objected to characterization of structuring as evidence of criminal knowledge

   ° Trial Court **overruled** the objection

Each ruling constituted an abuse of discretion, as the trial court permitted inadmissible speculation to go before the jury.

## D. Federal Rule of Evidence 602: Need for Personal Knowledge

Federal Rule of Evidence 602 Provides:
A witness may not testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Agent Valenti had no personal knowledge of the text messages' meaning, the parties' intentions, or the colloquial significance of the language used. His testimony therefore violated FRE 602.

### E. Federal Rule of Evidence 801(c): Hearsay Implications

When Agent Valenti testified to the contents of messages and interpreted their meaning, he was, in effect, presenting third-party statements (from Wynter Willis, Lorna Gooden, Kizmae Pipkin, etc.) for the truth of their contents. These are hearsay statements under Federal Rule of Evidence 801(c), not exempt from hearsay pursuant to any Rule 801(d) exception.

The messages themselves were not "admissions" by the defendant; they were communications involving third parties. Admission of these messages (particularly through the prism of Agent Valenti's interpretation) violated the hearsay rule.

### F. Cumulative Effect on the Jury

The jury heard nearly 40 pages of testimony (TT IV: 488-524) [Appendix512-548] in which Agent Valenti interpreted ambiguous text messages, characterized them as consciousness of guilt, and speculated about the defendant's intent. This pervasive improper testimony likely influenced the jury's verdict by presenting a compelling, albeit legally inadmissible, narrative of fraud.

**Reversal or a new trial is warranted** based on this evidentiary error.

### POINT IV

### UNFAIR GOVERNMENT CHARACTERIZATION OF THE EVIDENCE IN PRESENTING CIRCUMSTANTIAL EVIDENCE AS ADMISSIONS

### A. Prosecutorial Duty of Fairness

Prosecutors have an obligation to present evidence fairly and to avoid arguments that mischaracterize the evidence or appeal to the jury's prejudices. *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

When the government argues that ambiguous circumstantial evidence constitutes an "admission" of guilt or evidence of consciousness of guilt, and when the prosecutor relies on an agent's improper interpretation rather than the jury's independent analysis, unfairness occurs.

## B. Presentation of Interpretations as Admissions

Throughout his testimony, Agent Valenti characterized text messages as evidence of consciousness of guilt. For example:

- Messages about cash withdrawals were presented as evidence of structuring, not as ambiguous business discussions

- References to government letters were presented as evidence of fear, not as routine client-advisor communication

- Fee negotiations were presented as evidence of extortion-like "kick-back" schemes, not as legitimate service pricing

The prosecution's closing argument likely amplified these interpretations, inviting the jury to view Mr. Haynes's conduct through a lens of suspicion rather than analyzing whether specific criminal intent was proved.

## C. Remedy

Prosecutorial misconduct that taints the trial process warrants reversal or, at minimum, a new trial where the evidence of guilt is not overwhelming. *United States v. Modica*, 663 F.2d 1173, 1183 (3d Cir. 1981).

Given the weakness of the government's direct evidence and the prosecution's reliance on improper interpretation and speculation, reversal is appropriate.

## POINT V

### THE PROSECUTION OF MR. HAYNES WAS CONDUCTED UNDER AN UNLAWFULLY APPOINTED UNITED STATES ATTORNEY, REQUIRING VACATUR AND REMAND

The prosecution of Mr. Haynes proceeded while Alina Habba purported to serve as United State Attorney for the District of New Jersey. In *United States v. Giraud, Jr.*, 160 F.4th 390 (2025) the Third Circuit affirmed that Habba was not lawfully serving in that office and upheld her disqualification from participating in pending criminal prosecutions.

That ruling matters here because a federal criminal prosecution must proceed under the authority of a lawfully appointed United States. Attorney. When trial is conducted during the tenure of an unlawfully serving United States Attorney, the prosecution is infected by a structural defect in supervisory authority that cannot be dismissed as a mere internal personnel issue.

Mr. Haynes was tried in November 2025, during the period in which Habba purported to exercise the powers of the office in this District. The government's trial team acted under that defective authority. Under *Giraud*, the legitimacy of that supervisory authority was lacking as a matter of law.

This Court should vacate the conviction and remand for further proceedings conducted under a lawfully authorized United States Attorney. At minimum, the matter should be remanded for factual development concerning the extent to which Habba authorized, supervised, or ratified decision in this prosecution.

## CONCLUSION

The conviction of Leon Haynes should be **REVERSED** on the grounds that:

1. **The evidence was insufficient to prove specific intent to evade taxes** beyond a reasonable doubt. The government presented only circumstantial financial evidence and ambiguous text messages, without direct evidence of knowledge or fraudulent intent.

2. **Text messages were improperly authenticated** without satisfying Federal Rule of Evidence 901(a). No witness testified regarding the search warrant process, chain of custody, or technical verification of the iCloud extraction.

3. **Special Agent Valenti improperly interpreted text messages**, violating Federal Rules of Evidence 701 and 602. The agent provided specialized opinion testimony without qualifying as an expert and without personal knowledge of the communications' meaning.

4. **The Trial court abused its discretion** in overruling defense objections to improper testimony and improperly authenticated evidence.

5. **Prosecutorial misconduct** in presenting circumstantial evidence and agent speculation as admissions of guilt deprived Mr. Haynes of a fair trial.

6. **Prosecution was conducted under unlawfully appointed United States Attorney.**

**Alternatively,** if the Court finds that some evidence supports conviction, the cumulative effect of these evidentiary errors warrants reversal and a new trial where the government must present admissible evidence of the defendant's specific knowledge and fraudulent intent.

Respectfully submitted,
KORIBANICS & KORIBANICS
Attorney at Law of the
State of New Jersey

Date: June 25, 2026

By: /s/ *Michael P. Koribanics*
MICHAEL P. KORIBANICS, ESQ.
*Attorneys for Appellant*
*Leon Haynes*

# CERTIFICATE OF BAR MEMBERSHIP

I certify that I am an Attorney of the State of New Jersey and that I am, therefore, entitled to practice before the Court of Appeals for the Third Circuit.

/s/ *Michael P. Koribanics*

Michael P. Koribanics, Esq.

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

I hereby certify that I am an Attorney at Law of the State of New Jersey, and that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[ X ] this brief contains approximately 5,986 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[   ] this brief uses a monospaced typeface and contains [   ] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using Microsoft 365 word processing system in Times New Roman 14- point font; or

[   ] this brief has been prepared in a monospaced typeface using WordPerfect 8 word processing system with 10 characters per inch.

Dated: June 25, 2026

/s/ *Michael P. Koribanics*
Michael P. Koribanics, Esq.
Attorney for Leon Haynes

## CERTIFICATE OF SERVICE

I certify that I caused one copy to be sent via e-filing and seven (7) copies of the foregoing Brief of Appellant and four (4) copies of Appendix on Behalf of Leon Haynes to be served upon the following via USPS Priority Mail Express, addressed to:

**Marcia Waldron, Clerk**
**U.S. Court of Appeals for Third Circuit**
**21400 U.S. Courthouse**
**601 Market Street**
**Philadelphia, PA 19106**

I certify that I caused one (1) copy of the foregoing Brief of Appellant and Appendix on Behalf of Leon Haynes to be served upon the following via e-filing and one (1) copy via USPS Priority Mail Express, addressed to:

**Mark E. Coyne, A.U.S.A.**
**Appeals Division**
**970 Broad Street, Suite 700**
**Newark, NJ 07102**

I certify that I caused one (1) copy of the foregoing Brief of Appellant and Appendix on Behalf of Leon Haynes to be served upon the following via U.S.P.S. Priority mail:

**Leon Haynes, Reg. No. 70837-510**
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1000
White Deer, PA 17887

Dated: June 25, 2026

/s/ *Michael P. Koribanics*
**Michael P. Koribanics, Esq.**

## CERTIFICATION THAT E-BRIEF AND HARD COPY ARE IDENTICAL

I hereby certify that I am an Attorney at Law of the State of New Jersey, and that:

1. The brief filed on behalf of Appellant, Leon Haynes, via e-filing and hard copies are identical files.


## CERTIFICATION THAT E-BRIEF HAS BEEN VIRUS CHECKED

1. Our computer is equipped with a virus scan program ESET Endpoint Antivirus 13.0.2044.0.


Dated: June 25, 2026

/s/ *Michael P. Koribanics*
**Michael P. Koribanics, Esq.**

# APPENDIX VOLUME I

## TABLE OF CONTENTS

Notice of Appeal (Docket No.   ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Leon Haynes Judgment in a Criminal Case . . . . . . . . . . . . . . . . . . . . . . .  2

Case: 25-3410   Document: 22   Page: 37   Date Filed: 06/25/2026

Michael P. Koribanics, Esq.
Koribanics and Koribanics
685 Van Houten Avenue
Clifton, NJ 07013
973-778-1800
*Attorney for Defendant Leon Haynes*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | HON. WILLIAM J. MARTINI |
| | : | |
| Plaintiff, | : | CRIMINAL NO. 24-CR-00232 |
| | : | |
| vs. | : | |
| | : | |
| LEON HAYNES | : | |
| | : | NOTICE OF APPEAL AND |
| Defendant. | : | RELIEF OF COUNSEL |

Please accept this as a Formal Notice hereby given that Leon Haynes, defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Third Circuit from the final judgement/sentencing entered in this action on April _15_, 2026. This Case was given Appeal No. 25-3410 when the client entered an Appeal prior to sentencing.

Furthermore, I cannot represent him in this Appeal due to conflicts of interest. So, we are requesting that new attorney be appointed to handle Mr. Haynes's Appeal.

Dated:   April _15_, 2026

/s/ *Michael P. Koribanics*
Michael P. Koribanics, Esq.
Attorney Pursuant to CJA 20
For Leon Haynes
Koribanics and Koribanics
685 Van Houten Avenue
Clifton, NJ 07013
michael@koribanicsandkoribanics.com
(973) 778-1800

Appendix001

AO 245B (Mod. D/NJ 12/06) Sheet 1 - Judgment in a Criminal Case

## UNITED STATES DISTRICT COURT
### District of New Jersey

UNITED STATES OF AMERICA

v.                                        CASE NUMBER   2:24-CR-00232-WJM-1

LEON HAYNES

      Defendant.

### JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, LEON HAYNES, was represented by MICHAEL P. KORIBANICS and VANDO CARDOSO.

The defendant was found guilty on count(s) 1s-18s by a jury verdict on 11/10/2025 after a plea of not guilty. Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date of Offense | Count Number(s) |
|---|---|---|---|
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 2/23/2021 | 1s-3s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 6/12/2021 | 4s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 7/20/2021 | 5s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 10/6/2021 | 6s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 6/12/2022 | 7s-8s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 1/8/2021 | 9s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 1/8/2021 | 10s-11s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 4/3/2021 | 12s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 7/2/2021 | 13s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 11/9/2021 | 14s |
| 26:7206(2) | AIDING AND ASSISTING IN THE PREPARATION OF FALSE RETURNS | 2/6/2022 | 15s |
| 18:1341 | MAIL FRAUD | 11/2020-1/2023 | 16s |

Appendix002

AO 245B (Mod. D/NJ 12/05) Sheet 1 - Judgment in a Criminal Case

| 26:7201 | TAX EVASION | 2021 | 17s |
| 26:7201 | TAX EVASION | 2022 | 18s |

As pronounced on April 08, 2026, the defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must pay to the United States a special assessment of $1,800.00, $100.00 for each of counts 1s-18s, which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of any material change in economic circumstances.

Signed this __15__ day of April, 2026.

William J. Martini
Senior U.S. District Judge

Case: 25-3410    Document: 22    Page: 40    Date Filed: 06/25/2026

07649

Appendix003

AO 245B (Mod. D/NJ 12/06) Sheet 2 - Imprisonment

Defendant: LEON HAYNES
Case Number: 2:24-CR-00232-WJM-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 144 months - 36 months on each of Counts 1s-15s, 144 months on Count 16s, 60 months on each of Counts 17s and 18s, all such terms to run concurrently.

The Court makes the following recommendations to the Bureau of Prisons: designate a facility for service of this sentence as near as possible to defendant's home address.

The defendant will surrender for service of sentence at the institution designated by the Bureau of Prisons.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on _____ To _____
At _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

Appendix004

AO 245B (Mod. D/NJ 12/06) Sheet 3 - Supervised Release

Judgment - Page 4 of 8

Defendant: LEON HAYNES
Case Number: 2:24-CR-00232-WJM-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of 5 years - 1 year on each of Counts 1s to 15s, 5 years on Count 16s, and terms of 3 years on each of Counts 17s and 18s, all such terms to run concurrently.

Within 72 hours of release from custody of the Bureau of Prisons, you must report in person to the Probation Office in the district to which you are released.

While on supervised release, you must not commit another federal, state, or local crime, must refrain from any unlawful use of a controlled substance and must comply with the mandatory and standard conditions that have been adopted by this court as set forth below.

You must submit to one drug test within 15 days of commencement of supervised release and at least two tests thereafter as determined by the probation officer.

You must cooperate in the collection of DNA as directed by the probation officer

If this judgment imposes a fine, special assessment, costs, or restitution obligation, it is a condition of supervised release that you pay any such fine, assessments, costs, and restitution that remains unpaid at the commencement of the term of supervised release.

You must comply with the following special conditions:

ALCOHOL/DRUG TESTING AND TREATMENT

You must refrain from the illegal possession and use of drugs, including prescription medication not prescribed in your name, and the use of alcohol, and must submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that you must submit to evaluation and treatment, on an outpatient or inpatient basis, as approved by the U.S. Probation Office. You must abide by the rules of any program and must remain in treatment until satisfactorily discharged by the Court. You must alert all medical professionals of any prior substance abuse history, including any prior history of prescription drug abuse. The U.S. Probation Office will supervise your compliance with this condition.

FINANCIAL DISCLOSURE

Upon request, you must provide the U.S. Probation Office with full disclosure of your financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, you are prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of the U.S. Probation Office. You must cooperate with the U.S. Probation Officer in the investigation of your financial dealings and must provide truthful monthly statements of your income. You must cooperate in the signing of any authorization to release information forms permitting the U.S. Probation Office access to your financial records.

INTERNAL REVENUE SERVICE - COOPERATION

You must fully cooperate with the Internal Revenue Service by filing all delinquent or amended returns within six months of the sentence date and timely file all future returns that come due during the period of supervision. You must properly report all corrected taxable income and claim only allowable expenses on those returns. You must provide all appropriate documentation in support of said returns. Upon request, you must furnish the Internal Revenue Service with information pertaining to all assets and liabilities, and you must fully cooperate by paying all taxes, interest and penalties due, and otherwise comply with the tax laws of the United States.

Appendix005

AO 245B (Mod. D/NJ 12/06) Sheet 3 - Supervised Release

Judgment - Page 5 of 8

Defendant: LEON HAYNES
Case Number: 2:24-CR-00232-WJM-1

### NEW DEBT RESTRICTIONS

You are prohibited from incurring any new credit charges, opening additional lines of credit, or incurring any new monetary loan, obligation, or debt, by whatever name known, without the approval of the U.S. Probation Office. You must not encumber or liquidate interest in any assets unless it is in direct service of the fine and/or restitution obligation or otherwise has the expressed approval of the Court.

### SELF-EMPLOYMENT/BUSINESS DISCLOSURE

You must cooperate with the U.S. Probation Office in the investigation and approval of any position of self-employment, including any independent, entrepreneurial, or freelance employment or business activity. If approved for self-employment, you must provide the U.S. Probation Office with full disclosure of your self-employment and other business records, including, but not limited to, all of the records identified in the Probation Form 48F (Request for Self Employment Records), or as otherwise requested by the U.S. Probation Office.

### OCCUPATIONAL RESTRICTIONS

As a further special condition of supervised release, you must refrain from employment or self-employment as a tax preparer or in a similar position in which you submit claims for Government benefits.

Appendix006

AO 245B (Mod. D/NJ 12/06) Sheet 3a - Supervised Release

Judgment - Page 6 of 8

Defendant: LEON HAYNES
Case Number: 2:24-CR-00232-WJM-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must answer truthfully the questions asked by your probation officer.

5) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7) You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have fulltime employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8) You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e.. anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

Appendix007

AO 245B (Mod. D/NJ 12/05) Sheet 3a - Supervised Release

Defendant: LEON HAYNES
Case Number: 2:24-CR-00232-WJM-1

## STANDARD CONDITIONS OF SUPERVISION

13) You must follow the instructions of the probation officer related to the conditions of supervision.

---

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed)_____
                          Defendant                                          Date


_____
          U.S. Probation Officer/Designated Witness                    Date

Appendix008

AO 245B (Mod. D/NJ 12/06) Sheet 6 - Restitution and Forfeiture

Judgment - Page 8 of 8

Defendant: LEON HAYNES
Case Number: 2:24-CR-00232-WJM-1

## RESTITUTION AND FORFEITURE

### RESTITUTION

The defendant shall make restitution in the amount of $55,217,857.72. Payments should be made payable to the U.S. Treasury and mailed to Clerk, U.S.D.C., 402 East State Street, Rm 2020, Trenton, New Jersey 08608, for distribution to the IRS.

IRS RACS,
Attn: Mail Stop 6261, Restitution
333 W. Pershing Avenue
Kansas City, Missouri 64108

The amount ordered represents the total amount due to the victim for this loss. Your restitution obligation will not be affected by any restitution payments made by other defendants in this case, except that no further payments will be required once payment(s) by one or more defendants fully satisfies the victim's total losses. The following defendant(s) in the following case(s) may be subject to restitution orders to the same victim for their respective loss amounts:

James Mastrogiovanni, 25CR00330
Albania Rosario, 25CR00131
Renville Eccles, 24CR00351
Taisha Bramwell, 24CR00715

The restitution is due immediately. It is recommended that you participate in the Bureau of Prisons Inmate Financial Responsibility Program (IFRP). If you participate in the IFRP, the restitution will be paid from those funds at a rate equivalent to $25 every 3 months. In the event the entire restitution is not paid prior to the commencement of supervision, you must satisfy the amount due in monthly installments of no less than $500, to commence 30 days after release from confinement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Appendix009